# CHARLESTOWN.

MICHAEL FRANKS ET AL *v.* MARY ANN MORRIS ET AL.

October 31, 1876.

1876.
August Term.

1. An agent whose duty it was to pay the taxes of his principal, assessed in the name of the heirs of a party of whom the principal claimed he was the sole heir, failed to pay the taxes, and when the land was sold for the non-payment of these taxes, purchased the same, professedly, for his principal, but takes the deed to himself therefor, and brings an action of ejectment against them, being in possession of the land under his principal, and recovers a judgment.—HELD:

A court of equity will perpetually enjoin the enforcement of such judgment, though the plaintiffs fail to show that the principal was the heir of the person in whose name the land had been taxed.

2. A suit in equity to enjoin the enforcement of such judgment brought immediately after its rendition, cannot be defeated by the plea of the statute of limitations, though the deed to such agent was made more than eighteen years before the institution of the suit.

Appeal from a decree of the circuit court of Tyler county, rendered on the fifteenth day of April, 1870, in a suit therein then pending, in which Michael Franks and others were plaintiffs, and Mary Ann Morris and others, defendants.

The facts are fully set forth in the opinion of the Court.

*R. S. Blair* for said Mary Ann Morris *et als.*, appellants

*J. W. McCoy* for said Franks *et als.*, appellees.

GREEN, JUDGE:

1876.
August Term.

Franks
v.
Morris.

· The plaintiffs in this cause filed their bill in the circuit court of Tyler county, on December 12, 1866, as purchasers, under Nicholas Dorsey, of Maryland, of certain lands in Tyler county, asking an injunction to a judgment of that court against them, obtained by the defendants, the widow and heirs of James Morris, in an action of ejectment, whereby said lands were recovered by them, and that a tax deed for said lands to James Morris might be cancelled as fraudulent. The record shows that these lands were included in patents to Robert Long issued in 1792, by the State of Virginia. The bill alleges, that he died, leaving an only child, Elizabeth, to whom these lands descended; that she marrid Nicholas Dorsey, and died without issue, and without kindred, maternal or paternal, and that her husband, Nicholas Dorsey, was sole heir, and the owner of said lands, under the fourteenth section of chapter ninety-six of the revised code of Virginia, of 1819.

These facts, though alleged in the bill, are not admitted in the answers, but are denied, and are not proven. Nicholas Dorsey, so claiming these lands, took possession of them some time prior to 1838, and placed the same under the care and management of James Morris, an attorney at law, and Morris continued for many years, to act as his agent. As such, he recognized the said Dorsey as the owner of these lands, selling portions of them for him, collecting the purchase money for him, authorizing parties to peal bark from said land, paying, out of moneys collected from such sales, the taxes on said lands, and receiving a deed from Dorsey for a portion of this land, as compensation to him as such agent; that this agency continued from 1838 to 1845; that while he was so acting as such agent, he suffered said lands to be returned delinquent for the non-payment of taxes in 1841 ; that he left his principal under the impression that he had paid up all the taxes on said lands, writing him sev-

84

eral letters, stating that the taxes for several years subsequent to 1841 had been paid, and, evidently, intending to leave the impression on Dorsey's mind, that all taxes had been paid, when these letters were written. The last of these letters was written in August, 1843.

In 1845, these lands were sold for the non-payment of the taxes of 1841. At this sale, James Morris, publicly, announced that he was Dorsey's agent, and that he was letting the land be sold, and buying it in, that he might perfect Dorsey's title. The land was sold in the name of Robert Long's estate. In 1848, he took from the clerk of the county court of Tyler, a deed for said land. The quantity of land conveyed by this deed, was two thousand acres. Nicholas Dorsey, having heard of this sale in January, 1852, filed his bill in the circuit court of Tyler county, asking to have this deed set aside as fraudulent; and on September 3, 1853, the court, on the hearing of the cause, decreed that James Morris release and convey to Dorsey, by deed of special warranty, the land which had been so conveyed to him.

- He appealed to the district court for the tenth judicial circuit; that court, on December 2, 1857, decided that Nicholas Dorsey was entitled to a surrender of the legal title to the lands in controversy, which James Morris had acquired at this sale for delinquent taxes, but that such surrender must be only on condition that he repay to James Morris the taxes he had paid on said lands, and the interest thereon. And the cause was sent back, with leave to James Morris to amend his answer, and to put directly in issue Nicholas Dorsey's title, and his right to call on James Morris to surrender his legal title; the court then expressly declining to determine whether Morris could contest Dorsey's right to demand such conveyance, or could otherwise dispute his title.

- On the return of the cause to the circuit court, Morris filed his amended answer, in which he denies that Dorsey has any title to the land, and alleges that in his letters to him, he sometimes claimed these lands as heir of

his wife, sometimes by the will of his mother, who was a cousin of his wife, and, as such, her heir, and sometimes as devisee of his wife. Nicholas Dorsey then died, and his death was suggested September, 1858, and in September, 1859, the court, stating that no motion had been made to revive the cause in the name of Dorsey's heirs on motion of Morris, ordered the suit to be abated. In 1862, Morris brought an action of ejectment against the plaintiffs in this suit, purchasers under Nicholas Dorsey, and in December, 1866, they withdrew their plea of not guilty, and confessed a judgment in this action to the heirs of Morris, he having died, reserving their equities. And they, thereupon, immediately brought this chancery suit to set aside this deed of the clerk of the county court of Tyler, to Morris, as fraudulent, and to enjoin the enforcement of this judgment in the action of ejectment.

The facts proven in this cause, were substantially the same as were proven in the former suit, and which have been above stated.

The circuit court of Tyler, on April 14, 1869, declared its opinion, that James Morris, was at, and before, the sale in 1845, of the land described as the lands of Robert Long's heirs, the agent of Nicholas Dorsey, who claimed to be the owner of said lands, he, Morris, acknowledging the said Dorsey as the owner thereof, and he, Morris, at the sale, stating that he was purchasing in said lands for said Dorsey, in order to perfect his title, and also that the plaintiff's claiming through said Dorsey as his vendees, are entitled to have a surrender to them of the legal title acquired by James Morris, under the said purchase, and for which he obtained a deed from the clerk of the county court of Tyler, on March 1, 1848. And it therefore decreed said deed to be void, so far as the complainant's hold any land within the bounds of the land, described in said deed held by them, or either of them by, through or under, Nicholas Dorsey. And the court further declared it's opinion, that

Nicholas Dorsey was liable to James Morris for the re-payment of one dollar and fifty cents, paid to the sheriff at said sale, on account of taxes due on said land, and also for the taxes paid, or chargeable to James Morris for years 1846, 1847, and 1848, with interest thereon at rate of ten per cent per annum, and the cause was referred to a commissioner to ascertain the amount of these taxes and charges. And the cause being finally heard on April 15, 1870, in conjunction with a like cause of John Fletchers and others, against the same defendants, it was decreed that the injunctions heretofore granted in these causes, to the judgments in the actions of ejectment for the several tracts of land in the bills named, rendered at December term, 1866, of circuit court of Tyler, be, and they were thereby, perpetuated, as to all the lands held by the complainants within the bounds of the lands claimed by Nicholas Dorsey, included in the deed of the clerk to him, dated March 1, 1848, and the defendants were forever inhibited from holding the same, or disturb-ing the complainants in the enjoyment of the same ; and the commissioners report showing that there was due to James Morris, for taxes paid and for the money paid for the purchase of said land, with interest thereon, as afore-said, in all $23.63, it was further ordered that the com-plainants pay this sum to the defendants, with interest thereon, at the rate of ten per cent per annum, from August 12, 1869, and also their costs in the ejectment suits, but that the complainants might offset these sums by the costs of these chancery suits.

It seems to me clear that there are no errors in these decrees, of which the appellants can complain. The evidence establish, beyond controversy, that James Mor-ris committed a gross fraud on Nicholas Dorsey, in per-mitting these lands to be sold for taxes while he was the agent to manage them for Dorsey ; in deceiving Dorsey by his letters, and leading him to believe that these taxes were paid ; in buying in these lands at the sheriff's sale,

professedly for Dorsey, and with a view of making his title good, and then getting a deed to himself for them from the clerk, and instituting actions of ejectment against purchasers under Dorsey, to the vendors of some of whom he himself had sold the land, as an agent of Dorsey.

Under these circumstances, all must admit that Morris had committed a gross fraud, and that he ought not to be permitted, by a court of equity, to deprive Dorsey, or persons claiming under him, of their land by such fraud. But it is insisted that as no title to these lands has been proven to have ever been in Dorsey, that he has not suffered by this conduct of his agent, and that, therefore, purchasers under him cannot complain. There is nothing in this position; for it is a familiar principle of a court of equity that an agent, who discovers a defect in the title of his principal, and makes use of this information to acquire a valid legal title for himself, will be held to be a trustee for his principal. *Rings v. Binns*, 10 P. 169, 12 Curtis 115. This case, however, is made still stronger against Morris, because it is proven that when he purchased, he expressly declared that he was purchasing for his principal, and whether previously authorized to do so, or not, is immaterial, as the principal has a right, subsequently, to assert, and claim the benefit of the purchase. An agent, who thus purchases for a principal, and has a conveyance to himself, is but a trustee of the legal title, and will be compelled by a court of equity to convey to the principal. *Wellsford, &c. v. Chancellor*, 5 Gratt, 39. *Church, &c. v. Sterling, &c.*, 6 Conn. 389.

The appellees rely upon the statute of limitations; but it does not apply to this case for several reasons. First, The appellees, as we have seen, are regarded by a court of equity, as trustees for the appellants, and in this view of such court, the appellants do not have an *adverse* title to the appellees, but are regarded as holding the title for them; in the next place the appellees,

1876.
August Term.

Franks
v.
Morris.

and those under whom they claim, are now and always have been in possession of the land, and a party, who is in the legal enjoyment of his property, can not have his rights forfeited to another, by failure to bring suit against the other, to test the validity of a claim which the latter may make, but has taken no steps to enforce. We have no statute of limitations in this State, which could be applied in such a case. See *Groesbeck v. Seeley*, 13 Mich. 329; and lastly, the object of this suit, is to perpetually enjoin the appellees from enforcing a certain judgment in an action of ejectment, and it was brought immediately after the rendition of the judgment.

The decree therefore of the circuit court of Tyler, of the fifteenth day of April, 1870, must be affirmed, and the appellees recover of the appellants their costs in this court expended, and thirty dollars damages.

President Haymond and Judge Moore concurred.

Judge Edmiston did not sit in the Court, having been counsel for some of the parties in the circuit court.

DECREE AFFIRMED.