CONAWAY et al. v. THIRD NAT. BANK OF CINCINNATI et al.

(Circuit Court of Appeals, Fourth Circuit. December 15, 1908.)

No. 822.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 243*)—ADMINISTRATION OF PROP-
ERTY—SALE BY TRUSTEE—WEST VIRGINIA STATUTE.

Code W. Va. 1906, § 3053, which authorizes the trustee "in any such
deed" to sell the property covered thereby at public auction, refers to
deeds of trust to secure creditors or indemnify sureties executed in pur-
surance of the preceding section 3052, but does not apply to deeds convey-
ing property for the benefit of creditors which convey an absolute title,
and the trustee in such a deed may sell in any manner authorized by
the grantor.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors,
Cent. Dig. § 777; Dec. Dig. § 243.*]

2. TRUSTS (§ 368*)—MANAGEMENT AND DISPOSAL OF TRUST PROPERTY—ACTION
AGAINST TRUSTEES—INJUNCTION.

A debtor conveyed all of his property with certain exceptions to trus-
tees. Later, a coal company, of whose stock and bonds he was a large
owner, pursuant to a resolution of its stockholders executed a power of
attorney to the same trustees authorizing them to sell its lands in such
manner and upon such terms as they might deem proper. After diligent
attempts during a year and a half to make a sale, they received an offer
for the property, of which they notified all creditors, stating that unless
objection was made they should accept the same. No objection being
made, they entered into a contract, receiving a cash payment, and a fur-
ther payment to be made on delivery and acceptance of the deed. Com-
plainants, who were creditors of the individual debtor but not of the
corporation, brought suit to enjoin the carrying out of such contract. The
trustees acted openly throughout, and after full consultation with all
creditors. *Held,* that there was no ground for the interference of a court
of equity, either because the sale was not made at public auction, because
of alleged inadequacy of price, or because the debts to be paid from the
proceeds of the land had not been judicially ascertained, especially as
it did not appear when complainants became creditors, nor that they had
a lien on any of the property.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 586; Dec. Dig. §
368.*]

3. TRUSTS (§ 244*) — DEATH OF TRUSTEE — SUCCESSION UNDER WEST VIRGINIA
STATUTE.

Where a purchaser of lands who was described in the contract of pur-
chase as trustee, and was shown to have made the contract as agent
and trustee for another, died before the transfer was made, the duty to
execute the trust devolved on his personal representatives, under Code
W. Va. 1906, § 4001, and such representatives have authority to defend
a suit pending against him relating to the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 351; Dec. Dig. §
244.*]

4. COURTS (§ 356*) — FEDERAL COURTS — DEATH OF PARTY AFTER JUDGMENT —
APPEAL BY PERSONAL REPRESENTATIVES.

The provision of the judiciary act of March 3, 1875, c. 137, § 9, 18 Stat.
473 (U. S. Comp. St. 1901, p. 513), that, on the death of a party to a judg-
ment or decree of a federal court before the expiration of the time for
a writ of error or appeal, his personal representative may file a duly cer-
tified copy of his appointment, and thereupon may enter an appeal or
bring a writ of error, does not require the filing of such certified copy of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appointment as a prerequisite to an appeal, where a formal order of revivor is entered and an appeal allowed in open court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 356.*]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

For opinion below, see 156 Fed. 144.

This suit was brought in the Circuit Court of the United States for the Northern District of West Virginia, by the Third National Bank of Cincinnati, and others, against Thomas Moore Jackson and Joseph E. Sands and others, attorneys in fact for the Dola Coal & Coke Company, a corporation, Charles E. Conaway (sometimes called erroneously C. A. Conaway in the record), and others. Such proceedings were had therein that said court, on January 17, 1908, entered a decree, among other things, setting aside a sale of certain property theretofore made by Joseph E. Sands and others, attorneys in fact for said Dola Coal & Coke Company, to said Charles E. Conaway. Shortly after said decree was entered, Mr. Conaway departed this life, and Zella Conaway and W. H. Conaway were duly appointed the personal representatives of the estate of the decedent. The said personal representative appealed from said decree to this court.

The facts disclosed by the record are, briefly stated, as follows: On the 17th day of December, 1903, the Dola Coal & Coke Company was incorporated under the laws of West Virginia, being capitalized at $600,000. T. M. Jackson and wife, by deed bearing date December 28, 1903, conveyed to this corporation 3,821 acres of coal and 186 acres of surface land, an aggregate of 4,007 acres, lying in Harrison county, W. Va. On January 1, 1904, said corporation executed a mortgage or deed of trust on its property to the Security Trust Company of Wheeling, to secure a bond issue of $500,000; that is, 1,000 first mortgage gold bonds of the value of $500 each.

On January 23, 1905, the affairs of the Dola Coal & Coke Company stood thus: It owned said 4,007 acres of coal and surface land, subject to liens as follows: First, "farmers' liens" on a few parcels of land; second, "partners' liens"; and, third, lien for the payment of said bonds, of which 500, or $250,000 worth, had been disposed of and become obligations on the company, making a total indebtedness of the corporation, including interest, of something over $500,000. It had issued and there were outstanding 6,000 shares of capital stock of the par value of $100 each, which were held by various persons. T. M. Jackson held 5,000 of them, and 1,000 were held by John F. Hosack, W. H. Koch, H. F. Jones, L. E. Sands, E. T. Hitchman, O. J. Sands, and Wm. P. Schaffer.

At that time, January 23, 1905, a meeting of the stockholders was held in the city of Wheeling, all the stockholders being present, and a resolution was adopted by unanimous vote authorizing and directing the board of directors of the corporation to cause Joseph E. Sands, Ira E. Robinson, and John W. Davis to be duly constituted attorneys in fact of the corporation to make sale of said real estate belonging to the corporation, upon such terms and at such times as they might deem proper, and to this end make and deliver an appropriate contract, deed, etc. On the same day, after said stockholders' meeting, the board of directors held a meeting, and, in pursuance of said resolution of the stockholders, authorized and directed the president of said corporation to execute and acknowledge for record and deliver to said Joseph E. Sands, Ira E. Robinson and John W. Davis a proper power of attorney in accordance with the terms of said resolution, and on the same day the president did make and deliver the proper power of attorney to said Sands, Robinson, and Davis.

Pursuant to the powers invested in them by said resolutions and power of attorney, said Sands, Robinson, and Davis, as such attorneys in fact, on the 27th day of September, 1906, sold said coal and surface land belonging to the corporation to Charles E. Conaway, who was acting for himself and as agent

for J. V. Thompson, for the price of $145 per acre. The contract of sale bearing date on the said 27th day of September, 1906, was reduced to writing, and duly signed and sealed by the parties thereto. By the terms of said contract, as appears from the record, the purchaser is to pay $145 per acre, or $581,015 in all. Of this sum he paid in cash $20,000 to said attorneys in fact on the day of sale, $80,000 to be paid on or before the 20th day of November, 1906, and the residue, with interest, to be made in five additional payments. The contract provides for the payment of the liens on the property out of the purchase money, and, further, that the second party, his heirs or assigns, "shall have until the 20th day of November, 1906, if required, to examine the surveys and abstracts of title, and pay said sum of eighty thousand dollars, but with the distinct understanding and agreement that the payment of said sum of twenty thousand dollars is to conclude the sale and purchase of the property upon the terms and conditions herein. It is further covenanted and agreed, however, in this behalf, that the payment of the said sum of eighty thousand dollars on or before said 20th day of November, 1906, shall be considered the essence of this agreement, but its non-payment on that date shall not suffice to release the party of the second part herein save with the consent of the party of the first part, as hereinafter provided; and if the said sum shall not be paid on or before the date (time being expressly made the essence hereof), the party of the first part, may, at its election, rescind the contract upon returning to the party of the second part the sum of twenty thousand dollars this day paid, less $10,000.00 to be retained therefrom by the party of the first part as liquidated damages for the nonperformance of this contract by the party of the second part, or may, in lieu of such rescission, elect to enforce the specific performance of this contract by the party of the second part herein by such appropriate methods as it may be advised."

After the execution of said contract of sale, and said Conaway had made the first payment of $20,000, and before the time of the making of the second payment of $80,000, to wit, on October 29, 1906, the plaintiffs instituted this suit, and the court below entered an order restraining said attorneys in fact "from taking any further proceedings for the sale of the property of the Dola Coal & Coke Company, and from executing any deed, writing, or conveyance to C. E. Conaway or any other person for the conveyance of the property of the said Dola Coal & Coke Company until the further order of this court."

The said Charles E. Conaway, before the 20th day of November, 1906, the day fixed in the contract for the second payment, to wit, on the 15th day of November, 1906, tendered and offered to pay to said attorneys in fact the sum of $80,000, and said attorneys in fact refused to accept said $80,000 for the sole and only reason that said restraining order had been awarded in this suit. After the purchaser, Conaway, made such tender to the attorneys in fact, he deposited said $80,000 in the First National Bank of Fairmont, W. Va., there to be held, ready to be paid over to the said attorneys in fact at such time and as soon as they are able and can accept the same. Thereupon said attorneys in fact declared their willingness to comply with said contract as soon as the said restraining order shall be dismissed.

The plaintiffs Third National Bank of Cincinnati and Union Savings & Trust Company filed their original and amended bills in this cause for the purpose of setting aside said sale of said coal and surface lands of said Dola Coal & Coke Company upon the alleged grounds: That the price of $145 per acre for which the property was sold "is a grossly inadequate price and value for the property"; that the sale should have been made at public auction; that, before any sale be made, there should be a judicial determination of the liens against the property; that a conspiracy exists between the Baltimore & Ohio Railroad Company, the Fairmont Coal Company, and others, in which John W. Davis and Joseph E. Sands participated to keep down the value of said property and prevent the sale or operation thereof, and that the purchaser, Conaway, "is acting at the direction and in behalf of the officers of the Fairmont Coal Company in making said pretended purchase, and that the purchase, if consummated, will inure to the benefit of the Fairmont Coal Company," etc., and the design is to acquire the property at their own price, regardless of value; that the proceedings of the corporation did not authorize said attorneys in fact to make said sale to Conaway, and that Conaway had legal notice of the

invalidity of the authority to sell; and the contract of sale made with Conaway is fraudulent and void on its face.

The bill prays, among other things, that further proceedings under said contract of sale be enjoined; that said sale of the property of the Dola Coal & Coke Company to Conaway be set aside; that the liens on said land be ascertained: "that a sale by the trustees at public auction, after due advertisement, be authorized, to be made upon reasonable and fair terms"; "that a special receiver may be appointed with authority and direction to take immediate possession and control of all the unadministered assets and property belonging to the estate of T. Moore Jackson, and the property of the Dola Coal & Coke Company, and administer said estate under the orders of this court," etc.

The cause was heard on the bills, the answers of Charles E. Conaway, John W. Davis and others, Lynn S. Horner, and T. M. Jackson all sworn to, and various affidavits, and the court, on the 17th day of January, 1908, entered a decree setting aside the sale of the property of the Dola Coal & Coke Company to Charles E. Conaway, and referring the case to a commissioner in chancery to ascertain and report the real estate belonging to said corporation, the liens thereon, and other matters concerning said corporation's affairs, also the assets of T. M. Jackson, his debts, &c. From this decree the personal representatives of Charles E. Conaway, deceased, appealed.

John Bassel and W. H. Conaway (W. S. Meredith, on the brief) for appellants.

V. B. Archer and Melvin G. Sperry (Sperry & Sperry, Johnson & Hoffheimer, on the brief) for appellees.

Before PRITCHARD, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). It is insisted by counsel for appellants that the trustees in making this sale were acting as attorneys in fact for and on behalf of the Dola Coal & Coke Company, and that therefore they were not trustees in the usual acceptation of the term, but were simply acting in pursuance of the authority thus granted by the Dola Coal & Coke Company to sell and dispose of the property in question, and that therefore any statute of West Virginia relating to sales of property under deeds of trust could not affect them in the slightest degree.

The learned judge who tried the case below, in disposing of this first question, said:

"First. It is well settled that it is immaterial as to the form and character of the instrument by which a trust may be created. It may also be created by more than one instrument in different forms, each bearing different technical names. The question in equity is always one of substance and not of form. I therefore construe the original agreement between Jackson and these trustees, the deed for his realty, the memorandum of assignment of his personal property, and the power of attorney of the Dola Company to them, as means resorted to to accomplish a single purpose, the creation of a trust in these trustees for the benefit of his creditors. The power of attorney, it is true, goes a step beyond the other writing and gives the right of disposition of the coal property of the Dola Company, in which Jackson was not alone interested. However, it cannot be denied that his interest was almost the whole thereof, that this power was executed solely because of his transfers before made, and with the sole purpose of better obtaining and securing his interests therein and vesting the same in the trustees."

The authority granted the trustees by the Dola Coal & Coke Company reads as follows:

"Now, therefore, be it resolved, that the board of directors of this corporation be and they are hereby authorized and instructed to cause Joseph E. Sands, Ira E. Robinson, and John W. Davis to be duly constituted the attorneys in fact of this corporation to make sale of all and singular its real estate as aforesaid, in such manner, upon such terms, and at such times as they may deem proper. * * *"

The court below held that the trustees were required by the provisions of section 3053 (W. Va. Code 1906) to sell the property in question at public auction. This section reads as follows:

"(6) The trustee in any such deed shall, whenever required by any creditor secured or any surety indemnified by the deed, or the personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable, shall have become payable and default shall have been made in the payment thereof, by the grantor, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction. * * *"

Owing to the various instruments executed by the grantor to his trustees, together with the power of attorney given to the trustees by the Dola Coal & Coke Company, the question arises as to whether the sale of the property of the Dola Coal & Coke Company was made in pursuance of the trust created by the execution of the deeds by the grantor, as well as the power of attorney executed by the Dola Coal & Coke Company, or whether the authority to make such sale was derived solely from the authority conferred upon the trustees in the power of attorney executed by the Dola Coal & Coke Company. The court below ruled that the various conveyances made by the trustees, as well as the power of attorney executed by the Dola Coal & Coke Company, constituted one transaction, and should therefore be treated as constituting a trust for the benefit of the creditors of the grantor. If the sale was made solely in pursuance of the power of attorney hereinbefore referred to, then unquestionably the trustees in making such sale were not required to advertise the property at public auction under the provisions of section 3053, or any other section of the Code of West Virginia pertaining to sales of property under deeds of trust. But for the purpose of deciding the questions involved herein, we will treat the ruling of the lower court in this respect as being correct, and that this property was sold in pursuance of an express trust created for the benefit of the creditors of the grantor.

Section 3052, which immediately precedes section 3053, appears to be confined strictly to deeds of trust. We therefore conclude that the provision of section 3053, relative to the manner of making sale of property under deeds of trust, must necessarily be construed as referring to deeds of trust executed in pursuance of section 3052. This section is limited in its scope to deeds of trust executed to secure creditors and to indemnify sureties; whereas the deed under which this property was sold was executed for an entirely different purpose, to wit, for the benefit of creditors of the grantor. The language of this section is so plain and explicit that there can be no doubt as to its true intent and meaning. It is obvious, even from a casual reading of the statute, that it was intended to apply exclusively to deeds of trust, and that it does not apply to a deed of assignment for payment of debts as in this instance. Another distinguishing feature is that there

is nothing in section 3053 which requires the trustee to enter into bond for the faithful discharge of his duties before making sale of the property conveyed or distributing the proceeds, except when required by the grantor or any cestui que trust in said deed. However, when we come to examine section 3054 of the Code of West Virginia of 1906, we find that its provisions require that the trustee under the conveyance therein contemplated shall, before entering upon the discharge of his duties as such, execute a sufficient bond for the faithful discharge of the duties thus imposed upon him. This section reads as follows:

"That a person appointed by an insolvent debtor as trustee in any assignment, conveyance, transfer, or other act of such insolvent debtor, which is intended to operate as an assignment of all such debtor's property for the benefit of all of his creditors, or which does so operate under the laws of this state, shall not have the power of such trustee until he qualifies as such by taking an oath and giving a bond in a penalty double the amount of the ascertained estate, with sufficient surety, before the clerk of the county court of the county in which such assignment, conveyance, transfer or other instrument is or should be recorded, or such act is done, in the manner, and with the effect as a personal representative of the estate of a decedent is qualified. And in case such person so appointed trustee by such insolvent debtor fails or refuses to so qualify the said county court shall appoint such trustee upon the application of any person interested. The oath of such trustee shall be that he will faithfully perform the duties of the office of trustee to the best of his skill and judgment, and will account for and pay over all money that comes to his hands as such trustee. Said bond shall be approved by said court, and conditioned that said trustee shall faithfully perform the duties of trustee to the best of his skill and judgment, and account for and pay over all money that may come to his hands as such trustee. Upon the qualification of such trustee, there shall be appraisers appointed to appraise the estate of the insolvent debtor in the same manner and by the same authority that appraisers are appointed for the estate of a decedent, and such appraisers shall be governed by the same laws, and perform the same duties that appraisers of the estate of a decedent are governed by and are required to perform. And all such trustees as aforesaid shall appear before some one of the commissioners of accounts of the county court before which he qualified as such trustee, and lay before such commissioner a report of his receipts and disbursements, and his vouchers for the same, in all respects and with like effect as is provided for fiduciaries generally by chapter 87 of the Code of West Virginia."

It is true that the trustees in this instance did not enter into bond, as required by the provisions of this section, but their failure to do so was due to the fact that such section was not in existence at the date of their appointment, it being enacted subsequent thereto.

It is also insisted that the provisions of section 3056 are such as to render the action of the trustees in disposing of the property at private sale a nullity and void. We do not think so, for the reason that the opening sentence thereof restricts its operation to property sold under deed of trust, and therefore the reason we have already assigned applies with equal force to this proposition, and we must conclude that deeds of trust as therein designated are such deeds of trust as may be executed for the purpose of securing creditors or indemnifying sureties. We have diligently examined the Code of West Virginia with a view of ascertaining the law of that state in regard to the time and manner of making sales under deeds similar to the one executed in this instance, and section 3054 is the only one we have found

that undertakes to prescribe the duties of trustees' under a deed made exclusively for the benefit of creditors, and there is nothing in that section which undertakes to prescribe the manner of making sales under such instruments. The enactment of this section is in recognition of the distinction between deeds of trust to secure creditors, or to indemnify sureties, and an express conveyance for the benefit of creditors. A provision that property conveyed by deed of trust to secure creditors, or indemnify sureties, should be sold at public auction, after giving sufficient notice, is wise, and one that is intended to protect the interests of the grantor and his creditor alike. While a creditor under the terms of the deed of trust may demand a sale under the deed, yet he cannot demand an immediate sale, and thus deprive the grantor of an opportunity to use all the means within his power to save his property; neither can the trustee dispose of such property at private sale, without giving the grantor an opportunity of securing bidders who will pay an adequate price for the same. By this provision, in many instances, the grantor, even though his property has to be sold to satisfy the debts secured, is enabled to secure bidders who are willing to pay a fair price for such property, and thereby release not only a sufficient amount to pay off the indebtedness of the grantor, but an amount sufficient to leave a surplus to which, under the provision of the deed of trust, the grantor would be entitled. Also, under a deed of trust executed for such purpose, the grantor, in the event that he should be able to pay the debt thus secured, would be entitled to have the securities sign a release of the property thus conveyed, or cancel the lien as recorded. In this case, however, it is not the purpose of the grantor to secure payment of a debt, but the sole object was to grant and convey his property to trustees absolutely, for the benefit of his creditors, and the estate thus transferred is dedicated for that purpose, and that purpose only. In other words, this deed of assignment is in effect tantamount to a sale and conveyance of the property by the grantor to his creditors, in that it is provided that the property thus transferred is to be sold, and the entire proceeds arising therefrom applied to the payment of the various creditors in accordance with the terms contained therein. There are none of the distinguishing features contained in a deed of trust executed for the benefit of creditors, or to indemnify sureties, to be found in the conveyance executed by the grantor in this instance. This conveyance to trustees was for the creditors, and the creditors only; but in a deed of trust the rights of the grantor are reserved and protected as hereinbefore stated.

The authority of the trustees to make sale of the property, as contained in the conveyance for the benefit of the grantor's creditors, reads as follows:

" * * * the trustees named take possession of all of the said real and personal property, and shall proceed with all reasonable dispatch to make sale of the same at such time and upon such terms and in such manner as they may deem most expedient, full and absolute discretion being hereby vested in said trustees in relation to the management, control and disposition of said property; * * * it being the intent and purpose of this contract and of the instruments to be executed in furtherance thereof, to vest the said trustees with the full, absolute and indefeasible title to the said property, both

real and personal, without right of redemption on the part of the said Jackson, and to be held by the said trustees for and on behalf of all the creditors of the said Jackson whether parties to this agreement or otherwise, for the sole use, benefit and behoof of the said creditors."

This provision clearly leaves the manner of sale, and time when it shall be made, etc., exclusively within the discretion of the trustees, there being no restriction or direction whatever as to when and how such sale shall be made. There is not a scintilla of evidence to show that the trustees acted improperly at any stage of the proceeding. In referring to the conduct of the trustees, the learned judge below in his opinion filed herein, made the following statement:

"Nor do I regard the charges of misconduct on the part of these trustees as sustained. It seems to me that, under all the circumstances, they are subject to neither condemnation nor just criticism."

Everything seems to have been done in the open, and the efforts of the trustees to secure bidders were such that their action in that respect became a matter of general notoriety in the vicinity where the property is situated, thus giving those who might desire to purchase the property full and ample opportunity to negotiate the same with the trustees, just as though there had been public advertisement of the time and place of sale, and they had been afforded an opportunity to bid at public auction. Likewise, the creditors, the only persons interested under the deed, were fully advised of the action of the trustees at all times, as will appear from the following statements taken from the answer filed herein by the trustees:

"(5) Further answering, respondents say, in relation to the sale made by them of the coal field of the Dola Coal & Coke Company to their codefendant Charles F. Conaway, that, as hereinbefore stated, they were continuously engaged without success from the 23d day of January, 1905, until September 27, 1906, in an endeavor to effect such a sale, or any sale of said property. That at a meeting of the creditors of the said Thomas Moore Jackson held in the city of Clarksburg on the 17th day of January, 1906, a resolution was offered by Lawrence Maxwell, Jr., then counsel for the plaintiffs and representing the plaintiffs at said meeting, instructing these respondents to proceed forthwith to advertise the said coal field and offer the same at public sale, and that the said resolution having been maturely discussed was by a vote of the creditors then present disapproved, and these respondents were instructed to further proceed with their efforts to dispose of said coal field at private sale. That at said meeting certain of the holders of bonds of the Dola Coal & Coke Company then stated that unless a sale of the said coal field should be shortly effected they would proceed to foreclose their mortgage and force the property to sale.

"That thereafter, in the month of May, 1906, no sale having been as yet effected, notwithstanding numerous negotiations entered into by these respondents, certain of the holders of the bonds of the Dola Coal & Coke Company demanded of these respondents that a further meeting of the said creditors should be called for the purpose of further considering the sale of the said property and of instructing these respondents to sell the same at forced or public sale if a private sale should not be sooner made. That such meeting was duly held on the 7th day of June, 1906, and at such meeting the plaintiffs were duly represented by Mr. Dudley V. Sutphin, vice president of the plaintiff Third National Bank of Cincinnati. That at such meeting it was again stated that no further delay in the sale of said property would on the part of the holders of the said mortgage bonds be permitted. Whereupon a general committee of creditors, composed of secured and unsecured creditors, was appointed to consider a plan by which the said coal field might be taken

167 F.—3

over by the creditors, or the equity of the common creditors therein might be preserved or protected; which said committee submitted to all the creditors of the said Thomas Moore Jackson a written statement bearing date the 27th day of June, 1906, a copy of which is herewith filed, marked 'Exhibit No. 10,' and in response thereto the plaintiffs, in the person of Mr. Sutphin, their representative, by letter bearing date the 27th day of June, 1906, a copy of which is herewith filed as a part of this answer, marked 'Exhibit No. 11,' signified their unwillingness to participate in the plans therein suggested; that thereafter, to wit, on the 18th day of July, 1906, a meeting of the creditors of the said Thomas Moore Jackson was again held at Clarksburg, at which the plaintiffs were again represented in the person of the said Dudley V. Sutphin, and an adjournment was had without any action looking either to the organization of any syndicate on the part of the said creditors or to any other device whereby the equity of the common creditors in said coal field might be in any manner protected or preserved. And it was then and there again stated on the part of the holders of the bonds of the Dola Coal & Coke Company that no further delay in the sale of the said coal field would or could be permitted.

"Respondents further aver that after the adjournment of the said last-mentioned meeting various holders of the said Dola Coal & Coke Company bonds signified to these respondents their intention of immediately foreclosing their said mortgage unless a sale should be forthwith effected, no interest having ever been paid upon any of the bonds held by them, and the said Dola Coal & Coke Company being therefore in entire default. That various holders of 'farmers' liens' of the class hereinbefore mentioned signified their intention of subjecting to sale portions of the field upon which their liens existed, and the holders of the notes constituting what has been hereinbefore styled, 'partners' liens' notified these respondents, as they had repeatedly done prior thereto, of their intention to enforce their said liens immediately upon their maturity, to wit, on the 1st day of January, 1907. Respondents therefore addressed to the creditors of the said Thomas Moore Jackson a letter under date of the 17th day of September, 1906, a copy of which is filed with the plaintiff's bill as 'Exhibit F,' notifying the creditors of the receipt of a positive offer and of respondents' intention to close the same, in the absence of any better proposition, on the 27th day of September, 1906. Respondents further aver that upon the issuance of said letter the creditors holding bonds of the Dola Coal & Coke Company, as well as those holding 'partners' lien' notes, met in the city of Clarksburg on the 28th day of September, 1906, and a meeting of the common or unsecured creditors was called by the First National Bank of Mannington to be held on the same date. That on that date the said secured creditors in meeting assembled notified these respondents, as well as the unsecured creditors then present, that unless the said unsecured creditors would in some manner assume the payment of the interest upon the said secured debts, and would guaranty the payment of the principal thereof, that they would, and did, instruct these respondents to proceed to make sale of the said coal field at the price then offered, and that they would and did refuse, in the event these respondents should proceed to offer the same at public sale, to make any assurances, guarantee, or promises that they would at such sale enter any bid whatever, or that they would protect the bidding to the amount of the debt due to them; and, the unsecured creditors then present being unable to effect any such arrangement, your respondents treated the instructions so given to them by the specific lienors upon the property as imperative and mandatory.

"Respondents further show that the said circular letter bearing date the 17th day of September, 1906, was duly dispatched to the plaintiffs in this cause, and on the 21st day of September, 1906, respondents received from the plaintiffs Third National Bank of Cincinnati a letter, a copy of which is herewith filed as a part of this answer, marked 'Exhibit No. 12,' wherein among other things, it was said:

"'We are not able to suggest any other program than that indicated by yourselves. We have made faithful effort with large coal people all over the country to get them to consider the property without the least result.'

"And thereafter, and prior to the said 28th day of September, 1906, respond-

enls received a further letter from the said Third National Bank of Cincinnati, a copy of which is herewith filed as a part of this answer, marked 'Exhibit No. 13,' in which it was further declared:

"'We have declined to join in a creditors' meeting Wednesday, and feel that the trustees have done all they could and have served all interests faithfully and well.'"

We do not think that the instruments under which this sale was made can be treated as constituting a deed of trust, as contended by counsel for appellee. Preliminary to the execution of the instrument in the first instance, it was agreed by more than 85 per cent. of the grantor's creditors that, as a means of finally settling and discharging his indebtedness, his real estate, with certain exceptions, should be conveyed and transferred to the trustees named therein, exclusively for the use of his creditors; the prime object being to secure a sale of the property thus conveyed, and distributing the proceeds thereof among his creditors in accordance with the stipulations therein contained. The right of redemption in this instance was expressly waived and denied, and the power of sale is unconditional. It cannot be contended that the grantor could not have sold and transferred this property outright to his creditors, in satisfaction of his indebtedness, nor that they in turn could not have taken from him a perfect and valid conveyance of the same; and this is precisely what was done in so far as practical results are concerned.

The court also based its action in entertaining the bill in this instance upon another ground, and, in discussing this phase of the question, said:

"Second. I am led to believe that this bill must be sustained and this property be required to be sold under the supervision of this court upon demand of these creditors, because it is the well-established policy of the law in this state to sell real estate only after the liens and their priorities have been ascertained and settled. Section 4147 of our Code (W. Va. 1906) expressly requires such liens to be ascertained, notice to lienholders to be published, and that all rights to parties to except and contest shall be preserved. It is needless to cite the multitude of cases construing this statute.

"I have not the slightest doubt of the sincerity of these trustees in their statement that they have accurately, as they believe, ascertained the creditors, their debts and priorities, secured by this deed of trust. We must admit, however, that this is private judgment, and not judicial determination. It was expressly provided in the trust agreement that creditors should have the right to sue to establish their debts and liens, and, if it had not been so provided, I think this right clear and undisputable if exercised within proper time.

"And finally, while no man can tell whether this large and valuable property, if sold at public auction, will or will not realize a larger sum than the one offered at this private sale, it is nevertheless true that many think it will, that a considerable larger sum has been offered for it, whether by one who could fulfill his offer or not we cannot tell, and that these trustees themselves expressly state in their circular letter to creditors that the sale price of $145 per acre is much below the true value of the property. Under such conditions it seems to me I must set aside this private sale, entertain this bill, ascertain the liens and charges against this real estate, and direct the sale thereof to be made by these trustees under the direction and orders of this court."

We have carefully considered this point, and we do not think the facts and circumstances surrounding this transaction are such as to justify the intervention of a court of equity. The plaintiffs are not

creditors of the Dola Coal & Coke Company, and there is nothing to indicate that they have ever acquired any lien on its property. The plaintiff the Third National Bank of Cincinnati, on the 14th day of March, 1905, recovered judgment in the Circuit Court of the United States for the Northern District of West Virginia against T. Moore Jackson, Lynn S. Horner, and Fleming Howell for the sum of $21,-568.28. Said judgment was docketed in the office of the clerk of the county court of Harrison county on the 17th day of January, 1906. The plaintiff the Union Savings Bank & Trust Company, on the same day and in the same court, recovered judgment against all of the parties for $9,766.47, and docketed the judgment in the office of the clerk of said court on the 17th of January, 1906. At the time, to wit, 19th of December, 1904, that the grantor entered into an agreement with his creditors to the effect that he would convey to Joseph E. Sands, Ira E. Robinson, and John W. Davis, trustees, all of his real estate and personal property, with certain exceptions, he was indebted to several creditors in various amounts, for the payment of which he desired to make provision. The plaintiffs do not allege that they were then creditors of Jackson, and it nowhere appears in the record that Jackson was at that time indebted to them, and the judgments upon which they rely as evidence of indebtedness were not recovered until three months after the conveyance to the trustees as hereinbefore stated. In the first instance, the judgments upon which they rely are against the grantor and others, and not against the Dola Coal & Coke Company, and we know of no principle upon which they would be entitled to proceed against the Dola Coal & Coke Company for the purpose of recovering debts due by the grantor; and it appears that, prior to the execution of the power of attorney by virtue of which this property was sold, all of the right, title, and interest of the grantor in the property of the Dola Coal & Coke Company had been conveyed to that company by proper deed of conveyance.

Among other things, the trustees in their answer say that under their administration ample opportunity was afforded all parties in interest for an inspection of the books and papers and examination of each and every transaction in respect thereto, and that an accounting had been had of all transactions in connection therewith, and that they are still "ready and willing to render to plaintiffs, or any other party in interest, any further accounting which may be by the plaintiffs lawfully demanded." That portion of the answer reads as follows:

"Further answering, respondents say that, as shown by the exhibits heretofore filed, they have from time to time accounted in full detail to all persons interested in the execution of the trust assumed by these respondents; that they have at all times afforded to the plaintiffs and all other creditors of the said Thomas Moore Jackson full access to any and all books of account kept by these respondents, and have answered in full detail any and all inquiries submitted by the plaintiffs or by any other of the said creditors, and that they have at no time refused to account or neglected to render to any person entitled thereto a full account of all and singular the transactions, collections, or disbursements entered into or made by them; that they have, as they believe, ascertained and properly listed all the assets of the said Thomas Moore Jackson, subject to the said trust, and that they have likewise ascertained all the creditors entitled to said assets or any part thereof; that as to certain of said debts there are matters still undetermined which render it im-

possible to state the true amount thereof, but which respondents believe will in due time be adjusted without resort to litigation for that purpose, and respondents here file as a part of this answer, marked 'Exhibit No. 17,' a detailed statement of the amount of the bonds of the Dola Coal & Coke Company now outstanding, and the holders thereof, and of the liens against the property of the said Dola Coal & Coke Company, and the holders thereof, and, as hereinbefore averred, respondents are ready and willing to render to plaintiffs or to any other party in interest any further accounting which may be by the plaintiffs lawfully demanded."

The instrument under which these trustees acted being plain and explicit as to the distribution of the proceeds arising from the sale of the property thereunder, and it appearing that the conduct of the trustees was eminently proper, we do not think that a court of equity at this stage of the proceeding should interfere with the trustees in the discharge of their duties as such.

We will now consider the motion to dismiss the appeal. In support of this motion, counsel contend that "the appeal must be dismissed because the heirs of Charles E. Conaway, to whom descended his interest in said coal field, have not joined in, nor are they in any manner parties to, this appeal." This contention would be good if the property involved descended to the heirs of the said Charles E. Conaway, but such is not the case. At the time of the death of said Conaway, there was no estate in the coal fields to descend to his heirs. Therefore, whatever estate he may have had therein, passed to his personal representative under the law of West Virginia. Code W. Va. 1906, § 1001, provides that:

"The personal representative of a sole or surviving trustee shall execute the trust, or so much thereof as remained unexecuted at the death of such trustee (whether the trust subject be real or personal estate), unless the instrument creating the trust otherwise direct, or some other trustee be appointed for the purpose by a court of chancery having jurisdiction of the case."

Conaway, in making the purchase of this property, acted as agent and trustee, and the contract with the trustees by which he acquired this property vested in him an estate in the coal field held in trust for Mr. Thompson. The contract describes him as a trustee, and, among other things, provides that the property shall be granted and conveyed with covenants of general warranty unto said party of the second part, or his assigns, or such person or corporation as he may designate in writing, free from incumbrances, etc. Also there was an agreement entered into between Mr. Conaway and Mr. Thompson to the effect that the property was being purchased for Mr. Thompson, and the affidavit of Mr. Thompson clearly shows that Mr. Conaway was only acting as trustee. Under these circumstances, it was the duty of Conaway, as Thompson's trustee, to have the complete title to the property thus purchased, in so far as it was in his power to do so, by a conveyance, vested in Thompson; and even, under the circumstances, if he had taken a deed in fee simple for the premises in question, he would have taken the same as trustee for the use and benefit of Thompson, and would have been bound, upon proper demand, to have conveyed the same to Thompson in accordance with the contract between them as to such transaction. "An agent, authorized to purchase lands for his principals, purchases in his own

name, and directs the conveyance to himself. He is bound to convey the land to his principals, upon their complying with his contract of purchase, in the same plight and condition in which the same was conveyed to him." Wellford v. Chancellor, 5 Grat. (Va.) 39; Franks v. Morris, 9 W. Va. 669.

It is also insisted that:

"Assuming that the personal representative of Charles E. Conaway had any right to appeal, they have not filed in the office of the clerk of the Circuit Court a certified copy of their appointment as required by the act of Congress (Act March 3, 1875, c. 137, § 9, 18 Stat. 473 [U. S. Comp. St. 1901, p. 513]), but merely an unauthoritative certificate of the clerk of the county court of Marion county, W. Va."

It appears from an inspection of the record that the death of Charles E. Conaway was suggested, and that it was proved to the satisfaction of the court that Zella Conaway and W. H. Conaway were on the 29th day of January, 1908, duly appointed administratrix and administrator of the personal estate of the decedent by the county court of Marion county, W. Va., and were duly qualified, and gave bond as such, and on their motion made in open court the suit was revived in their names as personal representatives of said decedent. It also appears that upon the petition of said personal representatives presented to the court and filed therein, accompanied by assignments of error in writing, and a bond in the penalty of $300 with surety, the court allowed the appeal, and approved as sufficient the bond, and ordered the same to be filed and recorded.

In view of these facts, it cannot reasonably be insisted that this appeal was wholly governed by the provisions of the act of 3d March, 1875, as hereinbefore contended. That statute is evidently intended to provide for an appeal in cases where there is no formal revivor of the suit against the personal representative of the deceased party. The suit being revived, the court undoubtedly had jurisdiction to allow the appeal in open court, which was done. Therefore we do not think that this point upon which counsel rely for dismissal is well taken.

It also appears from the record that the trustees hold $20,000 of money paid to them by said Conaway, as trustee for Thompson, and it also appears that there is $80,000 now held on deposit to meet the second payment of purchase money for the coal land, which $80,000 was furnished by said Thompson to the trustee, Conaway, and by him deposited in said bank. In any event, the interest of said Conaway was such at the time of his death as to entitle his personal representative to be made a party to this suit for the purpose of asserting his right to the $20,000, to which decedent was entitled for services rendered in the purchase of the land held by the trustees for his benefit, the payment of which is contingent upon the ratification of the sale of such property.

The motion of counsel for appellees to dismiss this appeal is without merit, and therefore refused.

For the reasons hereinbefore stated, the decree of the Circuit Court is reversed, and the case is remanded, with instructions to dissolve the injunction granted herein and to dismiss the bill.

Reversed.